Matter of Velez v Eger Health Care & Rehab Ctr. (2023 NY Slip Op 03056)

Matter of Velez v Eger Health Care & Rehab Ctr.

2023 NY Slip Op 03056

Decided on June 8, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 8, 2023

535214
[*1]In the Matter of the Claim of Paula Velez, Appellant,
v
Eger Health Care & Rehab Center et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date:April 26, 2023

Before:Lynch, J.P., Clark, Aarons, Reynolds Fitzgerald and McShan, JJ.

Paula Velez, Staten Island, appellant pro se.
Vecchione, Vecchione, Connors & Cano, LLP, Garden City Park (Michael F. Vecchione of counsel), for Eger Health Care & Rehab Center and another, respondents.

Clark, J.
Appeal from a decision of the Workers' Compensation Board, filed March 21, 2022, which ruled, among other things, that claimant did not sustain a causally-related occupational disease and denied her claim for workers' compensation benefits.
Claimant began working for the employer as a housekeeper in 2008 on a per diem basis. She moved to part-time employment in 2017, and then to full-time employment in 2018. In 2019, following back surgery, claimant filed a claim for workers' compensation benefits alleging that she developed a work-related debilitating back condition over time due to the nature of her job duties. The occupational disease claim was controverted by the employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier). Following various hearings, a Workers' Compensation Law Judge (hereinafter WCLJ), in a decision filed July 28, 2020, established the claim, found that claimant's back condition was an occupational disease, set the date of disablement as November 28, 2018 based upon the date of claimant's back surgery and found the carrier liable. Upon administrative review, the Workers' Compensation Board, in a decision filed April 5, 2021, found that the WCLJ failed to set forth the rationale for establishing the claim, rescinded the July 28, 2020 decision and returned the matter to the WCLJ. Through a decision filed September 1, 2021, a WCLJ established the claim again, finding that claimant had an occupational disease of the back, setting the disablement date as November 28, 2018 and finding the carrier to be liable. The carrier filed an administrative appeal, and, in a decision filed March 21, 2022, the Board reversed and disallowed the claim, finding that claimant failed to establish the requisite occupational link between her back condition and the distinctive features of her employment by competent medical evidence. Claimant appeals from the Board's March 21, 2022 decision.
We affirm. "To be entitled to workers' compensation benefits for an occupational disease, a claimant must establish a recognizable link between his or her condition and a distinctive feature of his or her occupation through the submission of competent medical evidence" (Matter of Grinnage v New York City Tr. Auth., 210 AD3d 1251, 1253 [3d Dept 2022] [internal quotation marks and citations omitted]). "Importantly, the Board's decision as to whether to classify a certain medical condition as an occupational disease is a factual determination that will not be disturbed if supported by substantial evidence" (Matter of Sanchez v New York City Tr. Auth., 206 AD3d 1428, 1429 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Urdiales v Durite Concepts Inc/Durite USA, 199 AD3d 1214, 1214 [3d Dept 2021], lv denied 38 NY3d 907 [2022]).
The Board found that the opinion of Claudine Holt, a physician who examined claimant, regarding causal relationship was based upon inaccurate employment history in terms [*2]of the symptom development and, among other things, contradicted prior treatment records and claimant's prior representations with regard to the symptom history and causality. As reflected in Holt's medical reports, claimant relayed that her employment duties became heavier when she began her part-time employment in 2017, that she was responsible for cleaning and laundry duties on four to eight floors, that her duties, in addition to mopping and cleaning, included, among other things, moving beds and that by 2017 she was unable to stand up straight. In contrast, claimant's supervisor testified, and such testimony was credited by the Board, that claimant's work duties did not become heavier once she became employed part time, and claimant acknowledged that, as of 2018, she was responsible for housekeeping duties on only one floor. Further, claimant's reported inability to straighten up was documented as early as September 2015 by her treating physician, Edwin Chang. Claimant also reported to Holt specific work incidents involving injuries to her back. Although claimant testified that she did not report any of those incidents to her employer because she was in fear of losing her job, she conceded that she nevertheless had filed four other incident reports between July 23, 2016 and March 16, 2018. To the extent that claimant relied upon Chang's August 2020 medical report that opined that a causal relationship existed between her back condition and employment duties, the Board noted, among other things, that, despite years of treating claimant, Chang had not previously made a causal connection and his contemporaneous medical records denied and/or remained silent about causality.
The voluminous medical records and diagnostic imaging further reflect complaints of back pain and treatment, including physical therapy and medication, in 2009, 2011 and 2013, with complaints of back symptoms dating back to 2007. Diagnostic testing from 2009, 2015 and 2017 indicates L5-S1 degenerative spondylolisthesis and spondylosis with mild bulging attenuated with neurological symptoms. The record also reflects claimant's discussions with medical personnel about spinal fusion surgery as early as 2013 and 2014. Significantly, as noted by the Board, despite the long-standing history of symptomatic back pain and treatment, none of those medical records mentioned a work history or occupational relatedness. In fact, through patient questionnaires filled out in 2015 and 2017, claimant denied work relatedness. Claimant also denied that the back condition was related to her employment when she applied for disability in 2018 and when asked by her supervisor. Further, although Chang indicated that claimant's occupation may be aggravating her back condition, he specifically noted that it was an aggravation of a symptomatic — not dormant — condition (see Matter of Clancy v Park Line Asphalt Maintenance, 191 AD3d 1088, 1090 [3d Dept 2021], lv dismissed 37 NY3d 1087 [2021]; compare Matter [*3]of Jones v Consolidated Edison Co. of N.Y., Inc., 130 AD3d 1106, 1107 [3d Dept 2015]).
In view of the foregoing, and deferring to the Board's assessment of the credibility of the testimony and medical evidence presented (see Matter of Morales v Lopez, 192 AD3d 1298, 1300 [3d Dept 2021]), we find that the Board's determination that competent medical evidence was not submitted to establish the requisite occupational link between claimant's back issues and the distinctive features of her employment to establish an occupational disease is supported by substantial evidence (see Matter of Sanchez v New York City Tr. Auth., 206 AD3d at 1430; Matter of Powers v State Material Mason Supply, 202 AD3d 1265, 1269 [3d Dept 2022], lv denied 38 NY3d 914 [2022]; Matter of Patalan v PAL Envtl., 202 AD3d 1252, 1253 [3d Dept 2022]; Matter of Urdiales v Durite Concepts Inc/Durite USA, 199 AD3d at 1215-1216). As such, the Board's determination to disallow the claim will not be disturbed. To the extent not specifically addressed, claimant's remaining contentions have been reviewed and are unpersuasive.
Lynch, J.P., Aarons, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the decision is affirmed, without costs.